Roy L. Self v. Commissioner. Mary H. Self v. Commissioner.
Self v. Commissioner
Docket Nos. 20961, 20962.
United States Tax Court
1950 Tax Ct. Memo LEXIS 195; 9 T.C.M. (CCH) 421; T.C.M. (RIA) 50128; May 26, 1950
*195 Certain properties sold by petitioners in the taxable year held to be capital assets and the gain realized thereon taxable as long-term capital gain. L. L. Gragg, Esq., 318-319 Jones Bldg., Corpus Christi, Tex., for the petitioners. John P. Higgins, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: The respondent has determined deficiencies in income tax for the calendar year 1944, as follows: Roy L. Self
$1,739.97
Mary H. Self
1,950.97
The proceedings were consolidated. The issue is the same in each proceeding, to wit: whether gain realized by petitioners on the sale of certain properties in the taxable year constituted ordinary or long-term capital gain. Some facts were formally stipulated and are included herein by reference. Facts not stipulated but hereinafter set out are found upon evidence presented at the hearing. Findings of Fact The petitioners are husband and wife, now residing at Harlingen, Texas. They filed separate income tax returns for the year 1944 with the collector of internal revenue at Austin, Texas. The petitioner Roy L. Self, hereinafter referred to as the petitioner, was *196 in 1944 and prior thereto engaged in the business of building and selling houses at Corpus Christi, Texas. He had no license as a real estate dealer, but sold his houses through local real estate firms. It was petitioner's custom and a general custom in his business for builders to finance houses constructed for sale with short-term construction loans running for periods of from 90 to 120 days from the date of completion. The purchasers of such houses obtained their own financing, paying the builder in cash, and the construction loan was then satisfied by him. During the years 1941 to 1944, inclusive, petitioner built the 13 houses, the character of the gain upon the sale of which is here in controversy. These 13 houses were among many others built and sold by petitioner during that period. Four of these houses were completed in 1941, one in 1942, seven in 1943 and one on February 1, 1944. All of these houses had at the time of their sale in the tax year been held for more than six months. All of these houses upon their completion were rented to tenants and occupied under rental contracts up to the time of their sale. One of the houses, known as the Kinney Street property, was built *197 by petitioner under contract with a tenant to occupy it for five years, the first two years at a rental of $100 a month and the last three at a rental of $125 a month. This particular property, after completion and occupancy by the tenant, was conveyed by petitioner to his wife as her separate property. The rentals from all of these properties were included by the two petitioners in their returns for each year as rental income and the taxes paid thereon. For the years 1942 to 1944, inclusive, rental income constituted the greater part of the income reported by each of these petitioners. In the case of each of the above-mentioned 13 houses the construction was financed by petitioner by securing long-term loans requiring monthly payments which included interest and amortization of principal. As of the dates of completion of the 13 houses here in question, there existed in Corpus Christi a very active demand for houses of this character. The Government had located at Corpus Christi its largest naval air station, employing some 8,000 civilian workers in addition to Navy personnel. There was, during this period, a "seller's market" for houses of this character and all of the 13 houses *198 could have been immediately sold at a profit upon completion. The real estate firm through which petitioner was selling certain properties built by him requested repeatedly through this period to be permitted to sell these 13 houses, but on each occasion was met with a refusal from petitioner, who stated that the houses were not for sale but had been built as an investment to be held for rental purposes, and constituted a "nest egg" for petitioner and his wife. The long-term loans secured by petitioner on eight of the 13 properties here involved were insured by the Federal Housing Administration. In each case an application was required by that Government agency, stating whether the house in question was being built for sale, occupancy by the owner or for rent. In each case the application filed by petitioner stated that the house was for rental purposes. All of the 13 houses here involved were sold by petitioner between April 1 and August 28, 1944. At that time petitioner was pressed for funds needed in his business. He served as mayor of Corpus Christi, Texas, for 1945 and a part of 1946, and in the latter year moved to Harlington, Texas. For the period during which petitioner *199 owned and rented the 13 houses in question he took depreciation thereon in his returns filed for those years, these deductions being allowed by the respondent. In their 1942 income tax returns the two petitioners reported gross profit from the sale of homes in the amount of $2,560.44 and rentals in the amount of $13,152. After the deduction of expenses, petitioners reported a net loss from business in the amount of $7,695.25. The petitioner Roy L. Self described himself as a "builder." In their 1943 joint income tax return the two petitioners reported gross profit from the sale of homes in the amount of $10,629.62 and rents in the amount of $18,955.18. After deduction of expenses the net income reported was $6,887.38. Because of the carryover of a net loss from 1942, the petitioners showed no net income for 1943. On March 15, 1945, the petitioners filed joint amended returns for the years 1942 and 1943. In the amended return for 1942 petitioners reported a net long-term capital loss of $1,983.24 on the sale of 13 properties and a net short-term capital gain of $1,353.61 on the sale of four properties. In the joint amended return for the year 1943 petitioners reported a net long-term *200 capital gain of $6,870.22 on the sale of 10 properties, and a net short-term capital gain of $1,825.75 on the sale of three properties. Opinion The issue here presented is one of fact. It is answered by the determination as to whether or not the 13 properties here involved were actually constructed as rental properties with the intention of holding them as an investment for the production of income or whether they were constructed, as other properties were by petitioner, for sale to purchasers on completion. If constructed and held for sale by petitioner to customers in the regular course of his business, these properties would not constitute capital assets and a gain upon their sale would be taxable in its full amount. If constructed and held as investments for the production of income by petitioners they would constitute capital assets and only 50 per cent of the gain realized upon sale in the taxable year would be included in income subject to tax. Section 117 (a) (1) and (b), Internal Revenue Code. They were treated by petitioners as capital assets, and the deficiencies arise upon respondent's determination that they were not capital assets and the gain realized was taxable *201 in its full amount as ordinary income. The facts here are almost identical with those involved in Nelson A. Farry, 13 T.C. 8. There the petitioner was a builder and developer of subdivisions. Unlike the petitioner here, Farry was a licensed real estate dealer. In 1944 and 1945 that taxpayer sold various properties which he had built and which he had been holding under lease to tenants during the period when rentals had been abnormally high due to war conditions. In the case of the property so sold it was shown, as in the present case, that the taxpayer had financed the building of these several properties by longterm loans in contrast to his practice and the general practice in constructing properties for sale to finance the building with short-term construction loans. In that case, in holding that the taxpayer had demonstrated the fact that the properties involved had been built and held as investment properties, and that the gain upon their sale as investment properties, and consequently capital assets, was taxable as capital gain, we said: "It is true, of course, that petitioner was in the business of developing two subdivisions in the city of Dallas, namely, Cedar *202 Crest and Clarendon Heights. He constructed houses on these properties and sold them at a profit. To this extent he was a dealer in real estate. That he does not deny and he has returned all of his gains from the sale of these Cedar Crest and Clarendon Heights properties as ordinary income. But a dealer can also be an investor, and, where the facts show clearly that the investment property is owned and held primarily as an investment for revenue and speculation, it is claimed as a capital asset and not property held "primarily for sale to customers in the ordinary course of trade or business." See E. Everett Van Tuyl, 12 T.C. 900, and Carl Marks & Co., 12 T.C. 1196. On the facts, we sustain the petitioner on the issue presented for our decision." It is difficult to reconcile the fact that the construction of these 13 properties was financed with long-term loans with an intent to dispose of them on completion in the regular course of business. In such cases the purchaser would of course assume the loan but the petitioners would still remain primarily liable. A builder so financing his houses built for sale would soon have outstanding liabilities to an extent *203 that would impair his credit. This form of financing here is also hardly to be reconciled with the fact that on the existing market these properties could have been disposed of at a profit immediately upon completion. Petitioner's testimony that they were built with the definite and fixed intent to hold them as investments is also supported by disinterested testimony that he repeatedly refused to sell them. We think the petitioners have demonstrated clearly that as to the 13 houses here involved there was a fixed and preconceived intent and purpose in their construction to hold them as investments for the production of income. As such, they constituted capital assets, and petitioners are sustained in including in taxable income only 50 per cent of the gain realized upon their disposition. Decisions will be entered under Rule 50.